**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

CHARLES GORMLY, as the Special
Administrator of the Estate of PORSCHA
TYNISHA BROWN, Deceased,

        Plaintiff,

v.

KOREAN AIRLINES CO., LTD.,

        Defendant.

§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

1.      Plaintiff, Charles Gormly, as the Special Administrator of the Estate of Porscha Tynisha Brown, Deceased, by their undersigned counsel, brings this Complaint against Defendant Korean Airlines Co., Ltd. and alleges as follows:

## INTRODUCTION

2.      This civil action arises out of the wrongful death of 33-year-old Porscha Tynisha Brown ("Brown"), who died as a result of several accidents that occurred on Korean Air Flight 94 ("KE Flight 94") during transit from Virginia to Seoul, South Korea.

3.      During the flight, Ms. Brown experienced a medical emergency. She had difficulty breathing, became distressed, and repeatedly requested assistance before eventually losing consciousness.

4.      Throughout Ms. Brown's medical emergency, and despite the pleas for assistance, Korean Air flight personnel failed to administer aid in accordance with industry standards and as required by Korean Air's own policies and procedures.

5.      Korean Air flight personnel failed to properly administer oxygen to Ms. Brown via an oxygen tank. Eyewitnesses report that Korean Air personnel offered an oxygen mask to Ms.

1

Brown *but never plugged it into the accompanying oxygen tank.* Thus, passengers who attempted to come to Ms. Brown's aid were led to believe that Ms. Brown was receiving supplemental oxygen when in fact she was not, and her belabored breathing was only hindered by the non-functional mask.

6. To make matters worse, Korean Air flight personnel also failed to produce the onboard medical kit until after Ms. Brown lost consciousness.

7. Further, Korean Air flight personnel failed to effectively utilize the onboard Automated External Defibrillator ("AED") machine. Korean Air flight personnel simply placed the machine on the ground next to Ms. Brown. Two passengers intervened and attempted to use the AED machine on Ms. Brown, but they were unfamiliar with the machine and did not know how to operate it.

8. Upon information and belief, Korean Air flight personnel also failed to timely notify the flight deck of Ms. Brown's medical emergency, which prevented diversion to the closest airport.

9. Had Korean Air flight personnel properly responded to Ms. Brown's medical emergency by effectively utilizing the oxygen tank, onboard medical kit, AED machine, and by timely notifying the flight deck, Ms. Brown would not have experienced the intense physical and emotional pain she suffered on KE Flight 94 and would have in all likelihood survived.

10. As a result of Korean Air's actions and failures outlined in this Complaint, Ms. Brown tragically passed away on KE Flight 94 at the young age of 33.

## PARTIES

11. Porscha Tynisha Brown, Deceased, had been at all relevant times a resident of Maryland and a citizen of the United States of America.

2

12. Plaintiff Charles Gormly ("Plaintiff") has been appointed as the Special Administrator of the Estate of Porscha Brown, Deceased, by the Orphans' Court for Prince George's County Maryland, Estate No. 132995.

13. Defendant Korean Airlines Co., Ltd. ("Korean Air") is headquartered in Seoul, South Korea. Korean Air operates at Washington Dulles International Airport ("Dulles").

14. On and before March 29, 2024, Defendant Korean Air was in the business of selling tickets for international carriage of passengers.

15. On and before March 29, 2024, Defendant Korean Air operated services for the carriage of passengers by air and conducted its business of carriage of passengers by air from premises leased or owned by Korean Air itself, or by another carrier with which it had a commercial agreement, at the Washington Dulles International Airport in Virginia.

## **JURISDICTION**

16. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because a federal question is presented pursuant to the Convention for the Unification of Certain Rules for International Carriage by Air done at Montreal on May 28, 1999 (hereinafter "Montreal Convention"). Under Article 33 of the Montreal Convention subject matter jurisdiction is proper because:

    a. Ms. Brown's place of destination was located within the territory of a state party to the Convention, the United States of America;

    b. The contract of carriage for the subject flight was entered into within the United States of America, where Korean Air transacts business; and

    c. Ms. Brown's principal and permanent place of residence was at the time of the accidents in the United States of America, and Korean Air operates services for

carriage of passengers by air either on its own aircraft or another carrier's aircraft pursuant to a commercial agreement to or from the United States of America, and Defendant Korean Air conducts its business of carriage of passengers by air from premises leased or owned by Defendant or by another carrier with which they have a commercial agreement.

17.     This Court has specific personal jurisdiction over Korean Air because Korean Air regularly transacts business within the commonwealth of Virginia and regularly operates scheduled flights to and from Washington Dulles International Airport in Virginia and surrounding major airports including Ronald Reagan National Airport and Baltimore/Washington Thurgood Marshal International Airport. As such, Korean Air – like all airlines – reasonably anticipates being haled into court for the flights that originate from Dulles and surrounding airports.

18.     Ms. Brown purchased a Korean Air ticket for KE Flight 94, which departed on Korean Air aircraft from Dulles International Airport in Virginia on March 29, 2024, and all material events related to this suit occurred during that flight. Dulles International Airport resides within the Alexandria Division of this District.

19.     Exercise of specific personal jurisdiction under Fed. R. Civ. P. 4(k)(2) as to Defendant, Korean Air, is consistent with due process, and with the Fifth Amendment to the United States Constitution, because Korean Air maintains sufficient minimum contacts with the United States as a whole such that the maintenance of this suit is reasonable, and does not offend traditional notions of fair play and substantial justice.

20.     Specifically, Korean Air purposefully avails itself of the privilege of conducting business in the American market through the following:

a.  By operating regularly scheduled daily flights into and out of the United States under the authority of a Foreign Air Carrier Permit (as amended), issued by the United States Department of Transportation.

b.  By registering to do business as a foreign corporation with the Virginia Secretary of the Commonwealth and having a registered agent in Virginia, located at 1 Saarinen Circle, Dulles, Virginia 20166.

c.  By transporting passengers daily aboard its own aircraft to and from the United States in general, and the Commonwealth of Virginia including Dulles International Airport, in particular.

d.  By owning and/or leasing real property generally within the United States and within the Commonwealth of Virginia.

e.  By maintaining commercial bases for operations and physical offices at several United States airports.

f.  By employing numerous individuals to carry out its business purposes generally within the United States, and particularly within the Commonwealth of Virginia.

g.  By engaging in the direct sale of airline tickets to citizens and residents of the United States, both in person and directly through its corporate website.

h.  By contracting with U.S. entities for ramp and towing service, cargo and baggage handling, catering and food preparation, and aircraft cleaning services, both generally within the United States and particularly within the Commonwealth of Virginia, making it subject to the laws of the United States with respect to those contractual relationships.

5

i.  By engaging in business activities in the United States, including substantial and ongoing transactions in the Commonwealth of Virginia.

21.    Venue is proper in this District pursuant to 28 U.S.C. §1391, *et seq.* because a substantial part of the events and/or omissions giving rise to these claims occurred in this judicial district, and/or Defendant is subject to this Court's personal jurisdiction with respect to the instant action.

<b><u>FACTUAL ALLEGATIONS</u></b>

22.    Ms. Porscha Tynisha Brown was a highly educated 33-year-old woman who was valued at her workplace, close with her family—including her brother and two young nephews—and beloved by her community.



23.     Ms. Brown was born in Silver Spring, Maryland and resided in District Heights. She obtained her college degree from Boise State College and her master's degree from the University of Maryland. Prior to Ms. Brown's passing, she had plans to pursue a doctorate degree.

24.     Ms. Brown worked as a Safety Specialist at the United States Department of Defense, and received the award for excellence from her Fort Belvoir Garrison Commander four days before her passing.



25.     In her honor, the award was renamed the Porscha Brown Customer Service Award.

26.     On March 29, 2024, Ms. Brown embarked on a flight itinerary to fly internationally from Dulles in the Eastern District of Virginia to Incheon International Airport ("Incheon") in Seoul, South Korea. Ms. Brown's final destination was Dulles in Virginia.

27.    At all relevant times, KE Flight 94 was operated and controlled by Defendant Korean Air, acting by and through its authorized employees and/or agents.

28.    All transportation of passengers by Korean Air, including the transportation of Ms. Brown from Virginia to South Korea, is subject to the Korean Air General Conditions of Carriage for International Passengers and Baggage (hereinafter "Conditions of Carriage").

29.    Ms. Brown's traveling companions were Rachel Adger ("Adger"), Justin Anoruo ("Anoruo"), and Finale Williams ("Williams").

30.    On KE Flight 94, Ms. Brown, Ms. Adger, and Mr. Anoruo sat close together toward the back of the plane, each in a window seat on a different row. Ms. Williams was seated approximately twenty rows in front of the group.

31.    Approximately twelve hours into the flight, and shortly after the second meal service, Mr. Anoruo asked Ms. Brown how she was feeling. Ms. Brown reported that she was feeling well.

32.    Approximately two minutes after this conversation, Ms. Brown left her seat to go to the restroom.

33.    A few minutes after Ms. Brown left her seat, airline personnel made an overhead announcement to ask if there were any medically trained passengers on board the airplane.

34.    Ms. Adger and Mr. Anoruo left their seats and proceeded to the back of the airplane where they found Ms. Brown sitting on the ground in the aisle, clutching her chest, saying "I can't breathe."

35.    Korean Air flight personnel handed an oxygen mask to Ms. Brown to place over her face, leading Ms. Adger, Mr. Anoruo, and Ms. Brown to believe that Ms. Brown was receiving oxygen.

8

36.    Despite the mask, Ms. Brown's belabored breathing continued and she continued to indicate to Ms. Adger, Mr. Anoruo, and Korean Air flight personnel that she could not breathe.

37.    Several passengers arrived at the back of the airplane to attempt to assist in providing aid.

38.    Upon information and belief, the passengers attempting to provide aid were also led to believe that the oxygen mask on Ms. Brown's face was supplying oxygen.

39.    Shortly thereafter, Ms. Brown lost consciousness and become nonresponsive.

40.    Korean Air flight personnel brought out the onboard AED machine and set it on the ground next to Ms. Brown and the passengers attempting to provide assistance.

41.    Although Korean Air flight personnel were trained on how to use the AED machine, they neither attempted nor offered to assist the passengers with correctly using the machine.

42.    The passengers attempting to provide aid attempted to utilize the AED machine on Ms. Brown.

43.    Several times, and in the presence of Korean Air personnel, the AED machine gave the audio command, "shock advised, shock advised."

44.    The passengers, who were not trained on the AED machine, did not know that they needed to press the "shock" button to administer a shock. Meanwhile, the Korean Air personnel who were trained on the AED machine stood by and did nothing. Consequently, no lifesaving shock was administered to Ms. Brown.

45.    After Ms. Brown lost consciousness, Korean Air flight personnel brought out the onboard medical kit for the first time.

46.    The passengers providing aid attempted to intravenously administer epinephrine to Ms. Brown.

47. While Ms. Brown's medical emergency unfolded, the Korean Air flight personnel alternated between panicking, observing, and taking notes.

48. At no point in time did the Korean Air flight personnel attempt to take charge of the situation, provide instructions to the volunteering passengers, or render aid to Ms. Brown. On the contrary, Korean Air flight personnel engaged in conduct that misled the passengers attempting to provide aid and inhibited their efforts to save Ms. Brown's life.

49. Because of the emergency, KE Flight 94 made a belated and unscheduled, emergency landing in Osaka, Japan.

*50.* ***Only after the flight made its emergency landing did Adger and Anoruo learn that the Korean Air flight personnel had never plugged the oxygen mask into the oxygen tank.***

51. Consequently, during the frantic attempts by passengers to save Ms. Brown's life, Ms. Brown ***never*** received supplemental oxygen from the oxygen tank provided by Korean Air flight personnel.

52. Ms. Brown was deplaned and transported to Rinku General Medical Center in Osaka, where she was pronounced dead on arrival.

53. Ms. Brown's Japanese death certificate lists her cause of death as "acute cardiac failure."

54. Upon information and belief, Korean Air has written policies and procedures that Korean Air personnel must follow if a passenger presents with a medical issue or emergency inflight.

55. Upon information and belief, these policies and procedures are intended to ensure the safety of all passengers on board Korean Air flights.

56. Upon information and belief, the Korean Air personnel on board KE Flight 94 did not adhere to Korean Air policies and procedures.

57. Contrary to Korean Air policies and procedures, Korean Air personnel on board KE Flight 94 did not timely respond to Ms. Brown's medical emergency.

58. Contrary to Korean Air policies and procedures, Korean Air personnel on board KE Flight 94 did not timely produce or utilize the onboard medical kit to assist Ms. Brown.

59. Contrary to Korean Air policies and procedures, Korean Air personnel on board KE Flight 94 did not effectively utilize the AED machine on Ms. Brown.

60. Contrary to Korean Air policies and procedures, Korean Air personnel on board KE Flight 94 made no attempt to render aid to Ms. Brown during her medical emergency.

61. The multiple accidents aboard KE Flight 94, each of which was the result of an act or omission by Korean Air personnel, caused Ms. Brown to suffer a tragic death at the age of 33. Each of these accidents was external to the medical emergency Ms. Brown suffered while on board KE Flight 94 and contributed to Ms. Brown not surviving her medical event.

## DEFENDANT'S LIABILITY UNDER THE MONTREAL CONVENTION

62. Ms. Brown was severely injured and died while she was flying internationally via Korean Air from Virginia to Seoul, Korea, on KE Flight 94.

63. Both the United States and Korea are signatories to the Montreal Convention and, as such, all personal injuries that occurred during KE Flight 94 are subject to the Montreal Convention.

64. At all relevant times, KE Flight 94 was operated and controlled by Korean Air through its employees, agents, and/or servants.

65.    At all relevant times, KE Flight 94 was operated as a common carrier engaged in the business of transporting fare paying passengers.

66.    As a common carrier, Korean Air, including its employees, agents, or servants, owed the highest duty of care to its passengers, including Ms. Brown.

67.    Upon information and belief, Korean Air flight personnel have specific protocols they must follow when a passenger is experiencing a medical emergency or otherwise appears unwell or in need of medical assistance.

68.    Upon information and belief, Korean Air flight personnel are trained on and required to follow specific Korean Air policies and procedures.

69.    Upon information and belief, Korean Air policies and procedures instruct flight personnel to timely respond to medical emergencies, timely request assistance from medically trained passengers in the event of a medical emergency, and timely initiate AED resuscitation in the event that a passenger is experiencing a medical emergency that requires such response.

70.    Among other things, during KE Flight 94 Korean Air, through its authorized employees and/or agents, failed to:

   a.   timely respond and render effective aid to Ms. Brown;

   b.   quickly identify Ms. Brown's symptoms of respiratory distress and provide her with a working oxygen mask properly plugged into an oxygen tank;

   c.   timely utilize the onboard medical kit in response to Ms. Brown's medical emergency;

   d.   quickly identify Ms. Brown's symptoms of cardiac arrest and initiate AED resuscitation;

12

    e.   timely and effectively communicate with the flight crew to facilitate a quick diversion; and

    f.   timely declare a medical emergency and divert KE Flight 94 to the nearest possible airport for an emergency landing.

71.    These failures constituted "accidents" under the Montreal Convention because they are unexpected or unusual events considering the circumstances of KE Flight 94, recognized industry standards, and Korean Air's policies and procedures.

72.    Had Korean Air personnel timely and effectively responded to Ms. Brown's medical emergency, Ms. Brown would not have experienced intense physical and emotional pain before dying at the age of 33.

73.    Pursuant to Article 17(1) of the Montreal Convention, Korean Air is "liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking."

74.    Under the provisions of Article 17 of the Montreal Convention, Korean Air's conduct, including but not limited to the acts and omissions set forth above, constitutes a Montreal Convention accident, in that it was an unexpected or unusual event or happening external to the passenger, Ms. Brown, and was causally linked to Ms. Brown's bodily injuries, suffering, and ultimate death.

75.    Under the provisions of Article 17 of the Montreal Convention, Korean Air is liable for damages sustained by Ms. Brown in the bodily injury and death of Ms. Brown that occurred on KE Flight 94.

## DAMAGES

76.     Plaintiff hereby alleges and incorporates all paragraphs in the preceding sections by reference herein.

77.     As a direct and proximate result of the aforesaid accidents, Ms. Brown was seriously injured and died.

78.     As a direct and proximate result of the aforesaid accidents, Ms. Brown was caused to suffer great pain, distress, agony, and mental anguish.

79.     As a direct and proximate result of the aforesaid accidents, Ms. Brown was caused to suffer great economic loss, and, in the future, shall continue to suffer great economic loss.

80.     As a direct and proximate result of the aforesaid accidents, Carolyn Brown, Porscha's mother and beneficiary of the Estate, and Ms. Brown were forced to expend great sums of money on medical treatment, transportation of Ms. Brown's remains, and funeral expenses.

81.     As a direct and proximate result of the aforesaid accidents, Ms. Brown was caused to suffer the complete loss of all future income.

82.     As a direct and proximate result of the aforesaid accidents, Plaintiff, as the Special Administrator of Ms. Brown's estate and on behalf of the beneficiaries of said estate, is entitled to compensation for the wrongful death of Ms. Brown, past and future lost earnings, past and future lost accumulations, expenses, and mental anguish and suffering.

## DEMAND FOR JUDGMENT

83.     Plaintiff Gormly, as the Special Administrator of the Estate of Porscha Tynisha Brown, Deceased, hereby demands judgment against Defendant Korean Airlines Co., Ltd. in an amount to be determined at trial, together with prejudgment interest, post-judgment interest, costs, and disbursements of this action.

**DEMAND FOR JURY TRIAL**

84.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims and issues so triable.

Dated: March 27, 2026                    Respectfully submitted:

                                         _____/s/_____
                                         Charles B. Molster, III
                                         Va. State Bar No. 23613
                                         THE LAW OFFICES OF CHARLES B.
                                         MOLSTER, III PLLC
                                         1901 Pennsylvania Avenue, N.W, Suite 910
                                         Washington, DC 20006
                                         Telephone: (703) 346-1505
                                         cmolster@molsterlaw.com

                                         Darren P. Nicholson (*pro hac vice* forthcoming)
                                         Hannah M. Crowe (*pro hac vice* forthcoming)
                                         Anna Katherine Benedict (*pro hac vice*
                                         forthcoming)
                                         BURNS CHAREST LLP
                                         900 Jackson Street, Suite 500
                                         Dallas, TX 75202
                                         Telephone: (469) 904-4550
                                         dnicholson@burnscharest.com
                                         hcrowe@burnscharest.com
                                         abenedict@burnscharest.com

                                         **Attorneys for Plaintiff**

15